UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERVYN L. DE AMARAL, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOLDSMITH & HULL, et al.,<br><br>    Defendants. | Case No. 12-cv-03580-WHO<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 86 |

Plaintiffs Mervyn and Jody Lin De Amaral prevailed in this action against defendants Goldsmith & Hull, P.C. and Eric Mintz alleging that they violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, CAL. CIV. CODE § 1788 *et seq*. ("RFDCPA"). This matter is presently before me on the De Amarals's motion for attorneys' fees and costs. Dkt. No. 86.

I find the motion suitable for disposition without oral argument and VACATE the April 2, 2014 hearing. Civ. L.R. 7-1(b); Fed. R. Civ. P. 78(b). Having considered the parties' submissions and the relevant law, I GRANT in part and DENY in part the De Amarals's motion.

**FACTUAL BACKGROUND**

This case arises from a debt collection action filed in the Superior Court of California, County of Contra Costa, against plaintiffs Mervyn L. De Amaral and Jody Lin De Amaral. Plaintiffs failed to make payments on a Wells Fargo Bank, N.A., ("Wells Fargo") credit card account. On August 26, 2010, LHR, Inc. ("LHR"), a debt buyer, purchased the account from Wells Fargo. On July 12, 2011, LHR filed a complaint against the De Amarals in Contra Costa Superior Court, attempting to recover $11,373.92 (the "state court complaint"). The state court complaint identified LHR as "Plaintiff" but made no mention of Wells Fargo, the original creditor, nor to any specific credit account. It also identified LHR as an entity who "provided" credit to the

De Amarals pursuant to a "written agreement." This was false because the De Amarals and LHR had no direct relationship. LHR did not identify itself as an assignee of the debt anywhere in the state court complaint.

On July 9, 2012, the De Amarals filed the present case, which asserts causes of action against LHR's attorneys, Goldsmith & Hull, P.C. ("G&H") and Eric Mintz, an associate at G&H (together, "defendants"). Their complaint alleges that the defendants' failure to identify the original creditor in the state court complaint violates section 1692e of the FDCPA and corresponding sections of the RFDCPA, which prohibit a materially "false, deceptive, or misleading representation . . . in connection with the collection of [the] debt." 15 U.S.C. § 1692e. On February 11, 2014, I granted the De Amarals's motion for summary judgment and found that the state court complaint's language violates the FDCPA and RFDCPA because it is materially misleading to the least sophisticated debtor. Dkt. No. 83. I entered judgment in favor of the De Amarals accordingly, which entitles them to their reasonable attorneys' fees and costs. Dkt. No. 84. The De Amarals filed the present motion on February 25, 2014, seeking attorneys' fees and costs in the amount of $123,005.30. Dkt. No. 86.

## LEGAL STANDARD

Congress has provided a statutory right to recover attorneys' fees under the FDCPA. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The prevailing party in actions brought under the FDCPA may recover reasonable attorney's fees and costs from the opposing side. *Id.*; *see also* 15 U.S.C. § 1692k(a)(3). "The FDCPA's statutory language makes an award of fees mandatory." *Camacho*, 523 F.3d at 978 (citation omitted). The purpose of this fee-shifting provision is to encourage private enforcement of the FDCPA. *Id.*

To calculate an award of attorneys' fees, district courts use the lodestar method. The lodestar is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* at 978. Although the lodestar figure is generally presumed to be a reasonable fee award, a district court "may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id.* District courts have "a great deal of discretion in determining the reasonableness of the fee." *Id.*

1   The party seeking an award of fees bears the burden of submitting evidence supporting the hours
2   worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S 424, 433 (1983). "Where the
3   documentation of hours is inadequate, the district court may reduce the awards accordingly." *Id*.
4   To determine what is a reasonable lodestar amount, the court may "exclude from a fee request
5   hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 434. Additionally, the court
6   must determine a reasonable hourly rate by considering "the experience, skill, and reputation of
7   the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.
8   1986).

## DISCUSSION

It is undisputed that the De Amarals are the prevailing party and are entitled to attorneys' fees and costs under the FDCPA. The De Amarals seek $117,740.00 in attorneys' fees and $5,265.30 in costs, for a total award of $123,005.30. Br. 5. The defendants contest the amount the De Amarals should recover in attorneys' fees and assert that "reasonable attorneys' fees would be $8,100.00." Opp 11.

### I. ATTORNEYS' FEES

The De Amarals seek to recover $117,740.00 in attorneys' fees. Br. 5. To support this amount, they provided declarations in support of the hourly rates sought by their attorneys and an itemized schedule detailing the services rendered by their attorneys, the hours worked in rendering those services, broken down by task, and the hourly rate billed by the attorney performing a particular task. Schwinn Decl., Ex. A. Mr. Schwinn provided 220.5 hours of work at an hourly rate of $450.00, for a total of $99,225.00. Mr Roulston provided 52.9 hours of work at an hourly rate of $350.00, for a total of $18,515.00. Br. 5.

Mr. Roulston states that he spent an additional 0.6 hours in this matter reviewing the defendants' opposition and 6.4 hours drafting the reply brief. Roulston Supp. Decl. ¶ 3.

#### A. Reasonableness of Hourly Rate

I must first evaluate whether counsel's billing rates are reasonable. "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation." *Camacho*,

523 F.3d at 971. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.3d 403, 407 (9th Cir.1990).

Mr. Schwinn's billing rate is $450 per hour. In support of this rate, Mr. Schwinn states that this amount is "comparable to the rates being charged by attorneys of similar experience and expertise in the San Francisco Bay Area's federal and state courts." Schwinn Decl. ¶ 11. He has fourteen years of experience representing consumers and debtors and provides an extensive list of the many consumer protection cases he has handled at the appellate court, U.S. District Court, and U.S. Bankruptcy Court level. *See id*. at ¶¶ 9. He further claims that this court has awarded him fees at the rate of $450.00 per hour before, *Id*. ¶ 11 (citing *Rivera v. Portfolio Recovery Associates, LLC*, 13-cv-2322 MEJ, 2013 WL 5311525 (N.D. Cal. Sept. 23, 2013), and state courts in Northern California have awarded him fees at the rate of $450.00 per hour or his "previous hourly rate" of $400.00. *See id*.

Mr. Roulston, an associate at the Consumer Law Center, bills at the rate of $350 per hour. Mr. Roulston is a 2007 graduate of Santa Clara University School of Law and his practice is "limited exclusively to the representation of consumers." *Id*. ¶¶ 4-5. Mr. Roulston states that his rate is "comparable to the rates being charged by attorneys of similar experience and expertise in California's federal and state courts," and provides a list of consumer protection cases he has handled in state and federal court. Roulston Decl., ¶¶ 9, 11.

The De Amarals submit the expert declarations of Ronald Wilcox and Scott Maurer, who are also consumer protection attorneys in the San Francisco Bay Area, to support the reasonableness of Mr. Schwinn's and Mr. Roulston's requested hourly rates. *See Wilcox Decl*. ¶¶ 14-18 (stating that the market rate in the San Francisco Bay Area for consumer law attorneys ranges from $300 to $700 per hour depending on skill, experience, and reputation and that Mr. Schwinn's and Mr. Roulston's hourly rates are below market rates given their skills and experience); Maurer Decl ¶ 6 ("Based on . . . standard rates in the San Francisco Bay area from my own knowledge, I believe that $450 is a fair and reasonable hourly rate for Mr. Schwinn's

4

time.").

The defendants submitted the expert declaration of June Coleman asserting that billing rates should be reduced to $300 per hour for Mr. Schwinn and $250 per hour for Mr. Roulston. Coleman Decl. ¶¶ 12-13, 20. These rates are below what Mr. Schwinn, Mr. Roulston, and other consumer law attorneys have previously been awarded by this court in successful FDCPA cases. *See, e.g., Rivera v. Portfolio Recovery Associates, LLC*, 13-cv-2322 MEJ, 2013 WL 5311525, at *8 (N.D. Cal. Sept. 23, 2013) (awarding fees in successful FDCPA action for Mr. Schwinn and an associate at rates of $450 and $300 per hour); *Scott v. Fed. Bond & Collection Serv., Inc.*, 10-cv-02825 LHK, 2011 WL 3652531, at 4-5 (N.D. Cal. Aug. 19, 2011) (awarding fees in FDCPA action for Mr. Schwinn and Mr. Roulston at rates of $350 and $250 per hour); *Palmer v. Far West Collection Servs., Inc.*, 04-cv-03027 RMW, 2008 WL 5397140, at *1 (N.D. Cal. Dec. 18, 2008) (awarding fees in successful FDCPA action for Mr. Wilcox and two other attorneys at rates of $325 and $465 per hour). To cut Mr. Schwinn and Mr. Roulston's hourly rates to $300 and $250 per hour would be a stark departure from the rates awarded to them by this court in recent years.

The De Amarals have adequately shown, through the declarations attached to their motion and upon comparison with the rates of attorneys in Northern California litigating FDCPA issues, that $450 per hour and $350 per hour for Mr. Schwinn and Mr. Roulston, respectively, are within the range of reasonable hourly rates for attorneys of comparable skill, experience, and reputation litigating similar cases in this jurisdiction.

### B. Reasonableness of Hours Expended

Having determined counsel's reasonable billing rates, I turn to the second component of the lodestar calculation: ascertaining the number of hours reasonably expended litigating this matter.

The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983); *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also

exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id*. at 434. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. *Cancio v. Fin. Credit Network, Inc.*, 04-cv-03755 TEH, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). Even if the opposing party has not objected to the time billed, the district court may not uncritically accept a fee request, but is obligated to review the time billed and assess whether it is reasonable. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984).

The defendants raise several arguments why they believe the De Amarals' fee request is unreasonable, excessive, redundant, or otherwise unnecessary. I will examine each in turn.

### 1. Frivolity of RFDCPA Claim

First, the defendants contend that attorneys' fees should be reduced by 25% because the De Amarals allegedly brought a frivolous claim against defendant Eric Mintz, an associate attorney at G&H. Defendants assert that Mintz "was named as an individual Defendant in the RFDCPA claim despite the fact that [the RFDCPA] excludes an attorney or counselor at law" from liability. Opp. 5. The defendants are mistaken. The First Amended Complaint did not bring an RFDCPA claim against Mr. Mintz. *See* Dkt. No. 18 ¶¶ 50-61 (RFDCPA cause of action stated in bold font "**Against Defendant, G&H, Only**") (emphasis in original). There is no reason to reduce attorneys' fees on this basis.

### 2. Abandonment of Statute of Limitations Claim

Next, the defendants assert that "at least two-thirds of the costs of attorney's fees should be reduced" to account for the time the De Amarals' counsel spent developing the claim that collection of the debt was barred by the statute of limitations, because the statute of limitations claim was later abandoned by the De Amarals at summary judgment. Opp. 6; *See* Dkt. No. 70 at 9 ("Plaintiffs hereby withdraw their claims based on the statute of limitations . . . but will rely on

their claims that Defendants made and used misrepresentations in an attempt to collect a consumer debt . . . .").

"The Ninth Circuit has outlined a two-part test for determining whether a fee should be reduced on the basis of abandoned claims." *Schueneman v. 1st Credit of Am., LLC*, 05-cv-4505 MHP, 2007 WL 1969708, at *6 (N.D. Cal. July 6, 2007) (citing *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 901 (9th Cir. 1995)).

> First, the court determines whether the plaintiff's successful claims are related to plaintiff's unsuccessful claims. If the claims are unrelated, then the court will not include the time spent on the unsuccessful claims in the final award. If the two categories of claims are related, then the court determines the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Full compensation is proper when the plaintiff's counsel has secured excellent results; full compensation is excessive when only partial or limited success was achieved. Such decisions are within the district court's discretion.

*Id*. (citing *Schwarz* at 901-02) (quotation marks omitted). The U.S. Supreme Court in *Hensley* explained that claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories"; claims are related if they "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S at 434–35.

Applying this standard, I conclude that the De Amarals' successful claims for violation of the FDCPA and RFDCPA are unrelated to their statute of limitations claim. The De Amarals' consumer claims are based on the legal theory that the defendants' state court complaint made materially "false, deceptive, or misleading representation[s] . . . in connection with the collection of [the] debt." 15 U.S.C. § 1692e. The statute of limitations claim is based solely on whether the defendants timely filed the state court complaint; it has nothing to do with the substantive allegations of the complaint. Therefore the statute of limitations claim is a distinctly different claim for relief based on different facts from claims on which the De Amarals ultimately prevailed. Further, there is nothing demonstrating that any efforts expended on the statute of limitations claim contributed to the De Amarals successfully prevailing on the FDCPA and RFDCPA claims. The claims are not related under the standard set forth by *Hensley*, and the De Amarals may not recover fees for work performed on the statute of limitations claim. *See e.g.,*

1  *Romberg v. Nichols*, 970 F.2d 512, 524 n.8 (9th Cir. 1992), vacated and remanded on other
2  grounds, 506 U.S. 1075 (1993) (concluding that a court need not compensate an attorney "for
3  efforts expended on extraneous and dismissed claims that did not contribute to the victory").
4  *Compare Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (state tort claims
5  were related to Title VII claim because they arose out of common core of facts that required
6  virtually the same evidence).

7  "Once a district court concludes that a plaintiff has pursued unsuccessful claims that are
8  unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all
9  hours spent litigating the unsuccessful claims." *Schwarz*, 73 F.3d at 904 (citing *Hensley*, 461 U.S.
10 at 440). In doing this, a court "may attempt to identify specific hours that should be eliminated, or
11 it may simply reduce the award . . . [t]he court necessarily has discretion in making this equitable
12 judgment." *Hensley*, at 436–37.

13 Neither party provides any evidence that assists me in making this determination. On the
14 one hand, the defendants assert that "at least two-thirds of the costs of attorney's fees should be
15 reduced" to account for the time the De Amarals' counsel allegedly spent on the statute of
16 limitations claim. Opp. 6. This is an absurd request--the defendants do not provide any evidence,
17 and the record does not support, that the De Amarals' counsel spent two-thirds of their billable
18 time on the claim. In fact, it is clear that this was a minor issue in the case: the billing records
19 submitted by Mr. Schwinn do not denote any time spent on researching, drafting, or developing
20 the statute of limitations claim. A review of the docket, including the parties' briefing on the
21 motions to dismiss, motions to strike, motion to transfer venue, and other filings, reveals that the
22 statute of limitations issue was not substantively raised or briefed before it was withdrawn at the
23 summary judgment stage. *See* Dkt. Nos. 10, 12, 20, 22, 49. The claim was briefly mentioned in
24 case management statements. *See* Dkt. Nos. 44, 58. And contrary to the defendants' assertion,
25 there is no demonstration that when the complaint was initially filed counsel knew that the statute
26 of limitations claim was unlikely to succeed or that the claim was frivolous.

27 On the other hand, some work obviously went into drafting the statute of limitations cause
28 of action and analyzing it through discovery, even though no time entries mention it. The De

Amarals offer no assistance in establishing how much time their lawyers spent on this issue, but "Hensley prohibits an award of fees . . . that includes work performed on the unsuccessful [claims]," *White v. City of Richmond*, 713 F.2d 458, 461–62 (9th Cir. 1983). After reviewing the pleadings, case management statements and other documents filed with the Court, it is clear that the statute of limitation cause of action was a relatively insignificant part of the litigation. I find that a 5% reduction of the total fees sought in the original motion, totaling $5,887, is warranted.

### 3. Degree of Success Obtained

The defendants argue that counsel's fees should be reduced because the De Amarals recovered monetary damages significantly less than the fees and costs of litigation. *See* Opp. 7-9; Coleman Decl., ¶ 20 ("Because Mr. Schwinn was only able to obtain $1,000 in recovery for his client, who sought $6,000 in statutory damages and actual damages of $3,000 . . . reasonable fees should be $10,000 (10 x damages award)" and "that figure should be [reduced to] $7,300 (10% of initial lodestar figure). Or since Plaintiff recovered no more than 1/9 of the damages she sought to recover, that figure should be 1/9 of $73,000, or $8,100.").

Courts in non-FDCPA cases sometimes reduce fee awards when a plaintiff recovers monetary damages significantly less than the fees and costs of litigation.[1] See e.g., *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 807, 810 (9th Cir. 1994) (Ninth Circuit vacated award in disability discrimination case where district court awarded the plaintiff $34,000 in damages, $127,242 in attorneys' fees, and $20,997 in costs, because "no reasonable person would pay lawyers $148,000 to win $34,000."). Courts have been reluctant, however, to reduce damages on the basis of a low monetary recovery in FDCPA cases, recognizing that FDCPA damages are capped at $1,000. *See, e.g., Defenbaugh v. JBC & Associates, Inc.*, 03-cv-0651 JCS, 2004 WL 1874978, at *4-5 (N.D. Cal. Aug. 10, 2004) (plaintiff who recovered the statutory maximum of $1,000 under FDCPA achieved more than a technical victory and was awarded fees and costs of $46,496.32); *Kottle v. Unifund CCR, LLC*, 13-cv-03413-JEM, 2014 WL 243140, at *2 (C.D. Cal. Jan. 13, 2014) ("As there rarely will be extensive damages, a rule of proportionality would

---

[1] None of the cases defendants cite in their brief in support of their "degree of success" argument are FDCPA cases. *See* Opp. 8-9.

discourage vigorous enforcement of the FDCPA."); 15 U.S.C. § 1692k(a)(2)(A) (FDCPA statutory damages not to exceed $1,000 in an individual cause of action). Because of this cap, a $1,000 recovery in an FDCPA case does not render a plaintiff's success "limited." *Defenbaugh*, 2004 2004 WL 1874978, at *5.

Although the De Amarals received only $1,000 in damages, this amount does not reflect a lack of success. Their purpose was to establish that the defendants violated the FDCPA, and they won. They were successful in their motion to strike and motion for sanctions, and they survived the defendants' motion to dismiss, motion to transfer, motion to strike, and motion for summary judgment. They are entitled to reasonable fees and costs. An across the board percentage reduction in the lodestar figure is not warranted.

### 4. Settlement Offer

Defendants contend that they "made an offer of $500.00 about a little more than one month after this case was filed . . . to forgive the debt in exchange for a waiver of costs" which was "not responded to in a good faith manner by plaintiff's counsel."[2] Opp. 11. Defendants assert that attorney Mintz "sent a fax to Mr. Schwinn in August 2012 . . . offering the sum of $500.00. Mr. Schwinn never responded to that offer and never made a counter offer." Mintz Decl. ¶ 4. The De Amarals claim that the defendants' offer was a "nuisance offer" that "would not even have covered Plaintiffs' potential statutory damages" or attorneys' fees for drafting and filing the complaint. Reply 10. The De Amarals also assert that the defendants did not make a Rule 68 offer at any time during the litigation. *Id*.

I decline to reduce the De Amarals' fees because of the settlement offer. The evidence does not suggest that the De Amarals' counsel acted unreasonably. *See Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir.1992) (holding that "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted, and accordingly, whether attorney's fees should be awarded. Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing forward with their litigation."). While the amount of fees

---

[2] Neither party asserts that the $500 offer was a privileged settlement communication, so I will consider it.

1    generated in this litigation seems quite high, the cause was in large part the defendants' decision to
2    litigate this matter aggressively: they filed a motion to dismiss, a motion to strike, a motion to
3    transfer venue, and a motion for summary judgment, all of which the De Amarals defeated.  The
4    De Amarals also prevailed on a motion for sanctions because the defendants failed to produce
5    relevant, specifically requested documents.  A relatively modest Rule 68 offer early in the case
6    could have substantially reduced this award, but defendants chose not to make one.  These
7    circumstances do not warrant a fee reduction.

### 5.  Specific Objections in Coleman Declaration

Defendants' expert June Coleman objects to specific time entries on Mr. Schwinn and Mr. Roulston's billing records.  Coleman Decl., ¶ 18.  Defendants seek to reduce 3.5 hours of Mr. Schwinn's time spent drafting the complaint to 2.0 hours because "[t]he complaint is nearly identical to all complaints that Mr. Schwinn files."  *Id*.  They seek to exclude the 4.6 hours Mr. Schwinn billed amending the complaint because most of the corrections were allegedly minor.  *Id*.  Defendants also seek to exclude the .3 hours Mr. Schwinn billed for leaving messages for clients.  *Id*.  Defendants argue that the 15 hours Mr. Schwinn billed drafting an opposition to a motion to dismiss should be reduced to 6 hours because "the issues raised in the Motion were straightforward and the brief is just over 9 pages."  *Id*.  They seek to reduce the 1.3 hours Mr. Schwinn billed drafting initial disclosures and reviewing defendants' initial disclosures to .4 hours because "Mr. Schwinn's initial disclosures are formulaic and should take only .3 to draft."  *Id*.  They seek to reduce the 3 hours Mr. Schwinn billed drafting a motion to strike (which was successfully granted by Judge Hamilton) to 1.5 hours because "Mr. Schwinn used a form motion."  *Id*.  Defendants seek to reduce the 2.6 hours billed my Mr. Schwinn and Mr. Roulston for meeting with clients regarding depositions to 1.3 hours because "the attendance of two attorneys at this meeting is duplicative."  *Id*.

Most of these criticisms are unfounded.  Upon review of the billing records, I find that 15 hours billed drafting the opposition to a motion to dismiss, 1.3 hours spent drafting initial disclosures and reviewing defendants' initial disclosures, and 3 hours spent drafting the motion to strike, are reasonable.  Because the defendants brought the motion to dismiss, I will not fault the

1  De Amarals' attorney for opposing it successfully. Likewise, billing 3 hours for drafting a
2  successful motion to strike is not excessive. Nor is 3.5 hours billed for drafting the complaint or
3  4.6 hours billed for amending the complaint.

4  The attendance of two attorneys at a meeting to prepare the client for a deposition, on the
5  other hand, was unecessary. Mr. Roulston's 1.3 hours of time spent preparing the client for
6  deposition is reduced to 0 hours. The fees for leaving messages are also inappropriate, so the .3
7  hours spent by Mr. Schwinn will not be awarded. These adjustments reduce the total by $590.00.

### 6. Drafting Attorneys' Fees Motion

The defendants assert that the 4 hours spent by Mr. Roulston and 4 hours spent by Mr. Schwinn in drafting the attorneys' fees motion should be reduced to a total of 3 hours. Coleman Decl., ¶ 18. Mr. Roulston states that he spent an additional 0.6 hours in this matter reviewing the defendants' opposition, 6.4 hours drafting the reply brief, and he anticipates an additional 1.0 hour will be incurred for preparing for and attending the hearing on this motion. Roulston Supp. Decl. ¶ 3.

"[I]t is not unreasonable for counsel to continue to accrue some limited fees after an offer of judgment, including those associated with litigation of a fee motion." *Scott*, 2011 WL 3652531, at *7. The defendants give no reason for reducing counsel's fees for drafting the fee motion other than "[t]his form attorneys' fee motion should take no more than 2-3 hours to draft." Coleman Decl., ¶ 18. Upon review of the motion it is clear that it is not a form motion; it is tailored to the facts and circumstances of this case. The defendants further contend that Mr. Schwinn should not be paid to "review bills and exercise billing judgment." *Id*. However, it is well-settled in the Ninth Circuit that an FDCPA plaintiff may recover reasonable fees for "time spent in establishing the entitlement to and amount of the fee." *Camacho*, 523 F.3d at 981 (citation omitted). Therefore, with the exception of 1 hour that Mr. Roulston would have spent preparing for and attending the vacated hearing on the motion for attorney's fees originally scheduled for April 2, 2014, the hours claimed are reasonable.

### II.   COSTS

The De Amarals claim that their attorneys incurred costs of $5,265.30 in litigating this

matter. Br. 9-10. On February 12, 2014, the De Amarals submitted an itemized bill of costs for filing fees, service fees, court reporter fees, service of the summons and subpoena, and witness fees in the amount of $2,545.95. Dkt. No. 85. The defendants did not object to these costs. Civ. L-R 54-2 ("Within 14 days after service by any party of its bill of costs, the party against whom costs are claimed must serve and file any specific objections to any item of cost claimed in the bill, succinctly setting forth the grounds of each objection."). On March 10, 2014, the clerk of the court taxed these costs against defendants. Dkt. No. 92.

In their motion for attorneys' fees, the De Amarals seek an award for the following additional costs: (i) $963.40 in photocopying fees; (ii) $122.46 in postage expenses; (iii) $39.00 in parking expenses; (iv) $1,074.46 in mileage expenses; (v) $520.03 in travel expenses; and $550.00 in process server fees. Br. 9-10. Again, the defendants do not contest these costs in their opposition brief. Accordingly, I GRANT the De Amarals' motion with regard to these costs. *See, e.g., Scott v. Fed. Bond & Collection Serv., Inc.*, 10-cv-02825-LHK, 2011 WL 3652531, at *4 (N.D. Cal. Aug. 19, 2011) (awarding undisputed costs for photocopying, filing fees, postage, and process server fees); *Rivera v. Portfolio Recovery Associates*, LLC, 13-cv-2322 MEJ, 2013 WL 5311525, at *8 (N.D. Cal. Sept. 23, 2013) (awarding undisputed costs for photocopying, filing fees, and process server fees, and finding award of "time and mileage costs" reasonable) (citing *Johnson v. Dist. of Columbia*, 850 F.Supp.2d 74, 82 (D.D.C. 2012) ("Time spent traveling is time that is not spent doing billable work and, in my experience, lawyers traditionally charge their clients for travel when they are doing so for their client's business."); *Rand–Whitney Containerboard v. Town of Montville*, 2006 WL 2839236, at *27 (D. Conn. Sept. 5, 2006) ("It is also reasonable that counsel be reimbursed for mileage and parking costs.")).

## CONCLUSION

For the reasons above, I GRANT the De Amarals' motion in part and DENY it in part. The De Amarals are awarded $111,263.00 in attorney's fees on the original motion, $2,450 for preparing their reply to the defendants' opposition, and $5,265.30 in costs, and, for a total award of $118,978.30.

**IT IS SO ORDERED**.

Dated: April 1, 2014

WILLIAM H. ORRICK
United States District Judge